DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} A confidential informant wearing a radio transmitter purchased crack cocaine from Ricardo Armstead at an apartment in Medina. Medina police *Page 2 
then sought and were issued a warrant to search the apartment. When they did, they recovered 37 grams of crack cocaine and $662. Mr. Armstead moved to suppress the evidence seized pursuant to the search warrant, arguing that the warrant did not precisely describe the items to be seized and that the affidavit in support of the warrant was deficient. The trial court denied the motion to suppress. This Court affirms the trial court's decision because, although the warrant was overbroad, it did specifically authorize the officers to search for crack cocaine and currency and because the affidavit was sufficient to provide the judge who issued the search warrant a substantial basis for concluding that there was probable cause to believe that crack cocaine and currency used in the purchase or sale of crack cocaine would be found at the apartment.
 I. {¶ 2} On September 24, 2005, an individual named Chris Bass leased an apartment located at 3 Young Avenue in Medina. Two days later, Medina police oversaw a drug purchase at that apartment by a confidential informant.
 {¶ 3} Prior to the purchase, the police searched the informant and provided her cash, the serial numbers of which had been recorded. They also supplied her with a radio transmitter. They then observed her as she met Mr. Armstead on State Street in Medina and accompanied him to the apartment at 3 Young Avenue. They lost sight of her when the pair entered the apartment, but they continued to monitor their conversation. Among other things, Mr. Armstead told the informant that the apartment was his new residence. While in the apartment, the informant *Page 3 
purchased a substance from Mr. Armstead that he represented to be crack cocaine. The police again observed the informant when she left the apartment. They recovered the substance she purchased from Mr. Armstead and analysis showed that it was in fact crack cocaine.
 {¶ 4} The following day, one of the police officers who had monitored the informant's purchase from Mr. Armstead prepared an affidavit and sought a search warrant from the Medina Municipal Court. Although the officer explained in his affidavit that a confidential informant had purchased crack cocaine at the apartment at 3 Young Avenue, he did not include in his affidavit the fact that the informant had worn a radio transmitter during the transaction or explain that he had actually watched her enter and leave the apartment. The officer did include in the affidavit that the apartment was leased to Mr. Bass and that Mr. Armstead was not on the lease.
 {¶ 5} The Municipal Judge issued a search warrant that authorized officers to search the apartment at 3 Young Avenue and all persons present there. They were provided authority to search for and seize, among other things:
 1. Cocaine, Crack Cocaine, and any other controlled substances or dangerous drugs;
. . .
 7. United States or foreign currency used in the purchase or sale of controlled substances;
. . .
 10. Any other contraband. *Page 4 
Police executed the warrant on September 29, 2005. They found and seized 37 grams of crack cocaine and $662.
 {¶ 6} The Medina County Grand Jury indicted Mr. Armstead on one count of possessing a controlled substance and one count of trafficking in a controlled substance. The indictment included a forfeiture specification.
 {¶ 7} Mr. Armstead moved to suppress the evidence seized pursuant to the search warrant, and the trial court denied that motion. He then pleaded no contest, and the trial court found him guilty. He was sentenced to three years in prison on the possession charge and six months in prison on the trafficking charge, to be served concurrently. He agreed to forfeit the $662 that had been seized at the apartment.
 II. {¶ 8} The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." "Two requirements therefore exist for search warrants: `probable cause supported by an oath or affirmation and a particular description of the place, persons and things to be searched and seized.'" United States v. Wicks,995 F.2d 964, 972 (10th Cir. 1993) (quoting United States v. Mesa-Rincon,911 F.2d 1433, 1436 (10th Cir. 1990)). Mr. Armstead has argued that the warrant in this case failed to meet either of the Fourth Amendment's requirements. While he has assigned only one error, that the trial court incorrectly denied his motion to *Page 5 
suppress, he has supported that assigned error with four arguments: (1) the search warrant was defective because it did not describe with particularity the items to be seized; (2) the affidavit supporting the search warrant was deficient because the statements linking him to the sale of crack cocaine were "conclusory" and "made without personal knowledge nor factual basis for support"; (3) the affidavit was deficient because it was based upon statements made by a confidential informant and did not include evidence supporting the informant's veracity; and (4) the affidavit was deficient because it did not include evidence connecting the apartment to him.
 A. {¶ 9} Mr. Armstead's first argument is that the warrant was defective because it did not describe with particularity the items to be seized. In addition to authorizing police to search for specific items including crack cocaine and currency, it also purported to authorize them to search for "any other controlled substances or dangerous drugs" and "any other contraband."
 {¶ 10} The particularity requirement of the Fourth Amendment was a response to "those general warrants known as writs of assistance under which officers of the Crown had so bedeviled the colonists."Stanford v. Texas, 379 U.S. 476, 481 (1965). A proper search warrant leaves nothing to the discretion of the officer executing it: *Page 6 
 The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.
Id. at 485 (quoting Marron v. United States, 275 U.S. 192, 196 (1927)). Not all broad and generic descriptions of things to be seized are invalid under the Fourth Amendment. A broad and generic description is valid if it "is as specific as circumstances and nature of the activity under investigation permit" and enables the searchers to identify what they are authorized to seize. United States v. Harris, 903 F.2d 770, 775
(10th Cir. 1990) (citing United States v. Leary, 846 F.2d 592, 600 (10th Cir. 1988)). As has been explained by the Ohio Supreme Court, the key inquiry is whether the items to be seized could have been described more precisely:
 In search and seizure cases where a warrant is involved, the requisite specificity necessary therein usually varies with the nature of the items to be seized. Where, as here, the items are evidence or instrumentalities of a crime, it appears that the key inquiry is whether the warrants could reasonably have described the items more precisely than they did.
State v. Benner, 40 Ohio St. 3d 301, 307 (1988) (citing LaFave, Search and Seizure: A Treatise on the Fourth Amendment 104-105, Section 4.6(d) (1978)) (abrogated on other grounds by Horton v. California,496 U.S. 128 (1990)).
 {¶ 11} In this case, the search warrant purported to authorize the officers who executed it to search for and seize "any other controlled substances or dangerous drugs" and "[a]ny other contraband." InState v. Casey, Mahoning *Page 7 
App. No. 03-MA-159, 2004-Ohio-5789, at ¶ 15, the Seventh District Court of Appeals determined that an authorization to seize all "drugs of abuse as defined by O.R.C. 3719.011(A)" was too broad:
 While this broad term includes drugs such as cocaine and marijuana, it also includes such intoxicants as plastic cement, gasoline, anesthetic gas, and prescription medications.
The language used in the warrant in this case was even broader.
 {¶ 12} In State v. Dalpiaz, 151 Ohio App. 3d 257, 2002-Ohio-7346, the Eleventh District Court of Appeals determined that marijuana seized pursuant to a warrant that had purportedly authorized officers to search for and seize a laundry list of items including "any other narcotic drugs and/or controlled substances" should have been suppressed. In reaching that conclusion, the Court noted that, although the police "clearly believed" the defendant was growing marijuana, the word marijuana did not even appear in the part of the search warrant that described the property to be seized. Id. at ¶ 29.
 {¶ 13} In this case, the officer who sought the search warrant had reason to believe that Mr. Armstead was selling crack cocaine. The warrant at issue specifically authorized police to search for and seize crack cocaine. The question is whether inclusion of overbroad language purporting to authorize a search for and seizure of a myriad of other things invalidated the entire warrant.
 {¶ 14} In State v. Casey, Mahoning App. No. 03-MA-159, 2004-Ohio-5789, despite determining that the description of items to be seized in the search warrant at issue was too broad, the Seventh District Court of Appeals determined *Page 8 
that the items seized in that case, crack cocaine, marijuana, and cash, should not have been suppressed. As in this case, the police had sought the warrant in Casey after a confidential informant had purchased crack cocaine at the house to be searched. In addition to purporting to authorize the executing officers to search for and seize all "drugs of abuse as defined by O.R.C. 3719.011(A)," the warrant had specifically authorized them to search for and seize crack cocaine. The court determined that, to the extent the warrant had authorized the officers to search for and seize crack cocaine, it was valid and the invalid part of the warrant should be severed from the valid part:
 [I]t would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invalidated in toto merely because the affiant and magistrate erred in seeking and permitting a search for other items as well.
Id. at ¶ 23-24 (quoting State v. Clark, 4th Dist. No. 92 CA 485,1993 WL 216319, at *6 (June 18, 1993), which, in turn was quoting 2 LaFave, Search and Seizure 257 et seq., Section 4.6(f) (2d ed. 1987)). Accordingly, it determined that the crack cocaine should not have been suppressed. It further determined that the marijuana and cash should not have been suppressed either, because their discovery would have been inadvertent in the officers' search for the crack cocaine.
 {¶ 15} As discussed below, the affidavit in support of the search warrant in this case presented probable cause that crack cocaine and currency used in the purchase or sale of crack cocaine would be found in the apartment at 3 Young *Page 9 
Avenue. The invalid parts of the warrant are properly severed from the parts authorizing the officers to search for and seize crack cocaine and currency. Inasmuch as crack cocaine and currency were the only items seized, the trial court correctly denied Mr. Armstead's motion to suppress.
 B. {¶ 16} Mr. Armstead's second argument is that the affidavit supporting the search warrant was deficient because the statements linking him to the sale of crack cocaine were "conclusory" and "made without personal knowledge nor factual basis for support." At the hearing on Mr. Armstead's motion to suppress, the officer who executed the affidavit for the search warrant explained that he had watched the confidential informant enter and leave the apartment where she purchased crack cocaine from Mr. Armstead and had listened to the transaction over the radio transmitter that the informant had hidden on her body. He did not, however, include that information in the affidavit in support of the search warrant. Only information included in the affidavit submitted in support of the request for a search warrant may be considered in determining whether it was issued based upon probable cause. State v.Graddy, 55 Ohio St. 2d 132, 134 n. 1 (1978). If the information included in the affidavit was deficient, therefore, that deficiency cannot be cured by the officer's testimony at the suppression hearing.
 {¶ 17} The affidavit contained a recitation concerning the confidential informant's purchase of cocaine from Mr. Armstead, although, because of the use *Page 10 
of the passive voice, it was unclear whether the affiant had first-hand knowledge of the facts recited or whether his knowledge was based upon hearsay:
 Within the past 72 hours, a controlled purchase of a known amount of a controlled substance took place, utilizing Confidential Source 453 (CS 453). Prior to the purchase, the source was searched for money and contraband, finding none. The source was then furnished with a known amount of buy money, money which was recorded and is identifiable. The source was surveilled going to and from the buy location, and searched again afterwards. The source successfully purchased a known quantity of crack cocaine, a scheduled II controlled substance, from Ricardo Armstead. The transaction took place within the residence of 3 Young, City of Medina, County of Medina, State of Ohio. The substance obtained by the source from this controlled purchase was field tested and was positive for the presence of cocaine.
In reviewing the affidavit in this case, this Court is called upon only to determine whether the judge who issued the warrant had a substantial basis for concluding that there was probable cause to believe that crack cocaine and currency used in the purchase or sale of crack cocaine would be found at 3 Young Avenue in Medina. See State v. George,45 Ohio St. 3d 325, 329 (1989). The quoted paragraph provided that substantial basis.
 {¶ 18} The United States Supreme Court has warned against "interpreting affidavits] in a hypertechnical, rather than a commonsense, manner." Illinois v. Gates, 462 U.S. 213, 236 (1983). Although it is not clear from the affidavit in this case whether the officer preparing the affidavit had first-hand knowledge of the confidential informant's crack cocaine purchase, it is clear from the description of that purchase that it was a controlled buy done under supervision of police. Even if the affiant's knowledge of that buy had been based upon hearsay, that would not *Page 11 
have rendered the affidavit insufficient in light of the fact that that hearsay would have undoubtedly come from another officer who did have first-hand knowledge of the buy:
 The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
Id. at 238. The affidavit gave the judge who issued the search warrant in this case a substantial basis for concluding that there was probable cause to believe that crack cocaine and currency used in the purchase or sale of crack cocaine would be found in the apartment at 3 Young Avenue.
 C. {¶ 19} Mr. Armstead's third argument is that the affidavit was deficient because it was based upon statements made by a confidential informant and did not include evidence supporting the informant's veracity. There are two flaws with this argument. First, it does not appear that the affidavit is based upon statements of the confidential informant. Although the paragraph of the affidavit quoted in connection with Mr. Armstead's second argument described the confidential informant's purchase of crack cocaine from Mr. Armstead, it appears to be either a first-hand description by the affiant or a description provided the affiant by a different police observer rather than a description provided by the *Page 12 
informant. Further, even if the affidavit had been based upon statements made by the informant, it contained information establishing her credibility:
 CS 453 has provided other information on known drug dealers, information which has been independently corroborated by other reliable confidential sources of the Medina Police Department. CS 453 has also conducted several successful controlled purchases of narcotics, which will result in criminal charges, for the Medina Police Department.
The fact that the confidential informant had provided other information that had proven reliable would have supported a conclusion by the issuing judge that she was reliable in this case. State v.Bernhard, Greene App. No. 2004 CA 66, 2005-Ohio-1052, at ¶ 12.
 D. {¶ 20} Mr. Armstead's final argument is that the affidavit was deficient because it did not include evidence connecting the apartment to him. The point of this argument is unclear. Although he has stated it as an argument, he has made no attempt to develop it in his brief to this Court beyond pointing out that he was not the lessee of the apartment. An appellant has the burden of affirmatively demonstrating error on appeal and substantiating his or her arguments. Figley v.Heather Corp., Wayne App. No. 04CA0054, 2005-Ohio-2566, at ¶ 8. Besides, the affidavit provided probable cause that he was selling crack cocaine from the apartment. It is unclear what more of a connection he believes was necessary.
 III. *Page 13 {¶ 21} Mr. Armstead's assignment of error is overruled. The trial court's judgment is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. Costs taxed to appellant. *Page 14 
WHITMORE, P. J., CONCURS
 MOORE, J., CONCURS IN JUDGMENT ONLY *Page 1