[Cite as *State v. Boggs*, 2018-Ohio-1369.]

STATE OF OHIO )                 IN THE COURT OF APPEALS
                 )ss:      NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

| STATE OF OHIO | C.A. No. 28852 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| SHELDON L. BOGGS, et al. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellants | CASE No. CR-2017-04-1476-A |

DECISION AND JOURNAL ENTRY

Dated: April 11, 2018

---

CARR, Judge.

{¶1} Appellants, Sheldon Boggs and Donald Boggs, Jr. ("Father"), appeal from the judgment of the Summit County Court of Common Pleas, ordering the forfeiture of certain property. This Court affirms.

I.

{¶2} The Summit County Drug Unit began investigating Boggs after several individuals reported that he was selling drugs out of his residence. Boggs was 18 years old at the time and living with his brother, his grandparents, and Father. He attended a local high school, as well as a local career center, and drove a 2011 Chevrolet Impala ("the Car"). When members of the Drug Unit conducted surveillance and three controlled buys with Boggs, they determined that he would use the Car to drive home from high school and conduct his illegal transactions before driving to the career center. On April 20, 2017, the Drug Unit executed a search warrant

at his residence. The search uncovered powder cocaine, a rock of crack cocaine, marijuana, Xanax, several guns, and $6,326 in cash.

{¶3} A grand jury indicted Boggs on counts of (1) trafficking in and possession of cocaine, (2) trafficking in and possession of Alprazolam, and (3) trafficking in and possession of marijuana. Each trafficking count also contained two attendant forfeiture specifications. The first set of specifications related to the $6,326 in cash. The second set of specifications related to the Car. Because the Car was registered in Father's name, Father also was named in the indictment, but strictly with respect to the second set of specifications.

{¶4} Boggs pleaded guilty to reduced charges, and the court sentenced him to two years of community control. Because he did not plead guilty to the forfeiture specifications that related to the Car, the court set the matter for a forfeiture hearing. After listening to the testimony and evidence presented at the hearing, the court determined that the Car had been obtained either directly or indirectly as a result of criminal activity. As such, it entered an order of forfeiture.

{¶5} Boggs and Father now appeal from the court's forfeiture order and raise one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED BY ORDERING THE FORFEITURE OF APPELLANT DONALD BOGGS, JR.'S 2011 CHEVROLET IMPALA, VIN #2G1WC5EM5B1218395 TO THE SUMMIT COUNTY DRUG UNIT AS THE EVIDENCE AT TRIAL WAS INSUFFICIENT AS A MATTER OF LAW.

{¶6} In their sole assignment of error, Boggs and Father argue that the trial court erred when it ordered the forfeiture of the Car. We disagree.

**{¶7}** If a person pleads guilty to or is convicted of a criminal offense that includes a forfeiture specification, "the trier of fact shall determine whether the person's property shall be forfeited." R.C. 2981.04(B). The State bears the burden of proving "by clear and convincing evidence that the property is in whole or part subject to forfeiture * * *."[1] *Id.* Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. This Court will uphold a trial court's forfeiture order if the record contains competent, credible evidence in support of the order. *State v. Vu*, 9th Dist. Medina No. 11CA0042-M, 2012-Ohio-746, ¶ 46, quoting *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

**{¶8}** "Proceeds derived from or acquired through the commission of an offense" are subject to forfeiture. R.C. 2981.02(A)(2). "In cases involving unlawful * * * activities, 'proceeds' means any property derived directly or indirectly from an offense." R.C. 2981.01(B)(11)(a). "A defendant's vehicle may be considered part of 'proceeds' that are subject to forfeiture in a criminal forfeiture proceeding." *State v. Sekse*, 12th Dist. Preble No. CA2017-05-006, 2018-Ohio-703, ¶ 15.

**{¶9}** Detective Ryan Knight, a member of the Summit County Drug Unit, testified on behalf of the State. He testified that Boggs came to his attention after a number of individuals reported that he was selling drugs out of his residence. The police arranged surveillance at the

---

[1] The General Assembly amended R.C. 2981.04(B) on April 6, 2017. The prior version of the statute only required the State to prove by a preponderance of the evidence that property was subject to forfeiture. *See, e.g., State v. Vu*, 9th Dist. Medina No. 11CA0058-M, 2012-Ohio-2002, ¶ 11. We would note that the trial court here applied the wrong burden of proof because it found that the State proved its forfeiture case beyond a reasonable doubt. The court's error was harmless, however, as the result of the error was to hold the State to an even higher burden of proof than it was statutorily obligated to satisfy.

residence and conducted three controlled buys with Boggs. From that, they learned that Boggs would drive the Car to high school in the morning, return home at lunch to conduct his drug sales, and drive to a career center in the afternoon. While conducting their surveillance, Boggs was the only person that the police saw driving the Car.

{¶10} Detective Knight testified that, when the Drug Unit executed a search warrant at Boggs' residence, they discovered drugs, paraphernalia, and over $6,000 in cash. Virtually all of the drugs they discovered were found in Boggs' bedroom, but they also found a rock of crack cocaine in Father's bedroom. The $6,000 was found in a cooler in Boggs' bedroom closet, and the police also found a money counter in Boggs' bedroom. Detective Knight confirmed that the purpose of the latter was to count cash bills and that it was an item he typically came across in drug cases.

{¶11} Following the search, Detective Knight interviewed Boggs and Father at the police station. According to the detective, Boggs admitted ownership of the drugs found in his room as well as the $6,000 in cash. He indicated that he sold drugs because he had not had a job in years and, if he worked at all, "it was 'under-the-table jobs.'" Boggs admitted that he had used money he earned selling drugs to purchase the Car. He indicated that the reason the Car was registered in Father's name was because he had a suspended license.

{¶12} Detective Knight testified that Father admitted ownership of the rock of crack cocaine that the police found in his bedroom. According to the detective, when he told Father that Boggs had admitted selling drugs and using his profits to purchase the Car, Father confessed that he knew about his son's activities. He also confessed that he knew his son had used his profits to buy the Car. Detective Knight testified that Father admitted he had put the Car in his name to help Boggs because Boggs had a suspended driver's license. The detective verified that

Father was listed as the Car's owner and that records indicated the Car had been purchased on March 10, 2017. Though Detective Knight spoke with several family members, he testified that no one ever claimed another person had purchased the Car for Boggs.

**{¶13}** Boggs did not testify at the forfeiture hearing, but Father did. Father testified that he purchased the Car in March 2017 and paid $10,600 in cash for it. He claimed that the cash payment was comprised of $2,000 he had borrowed from his mother and $8,600 he had saved from three roofing jobs he performed in August and October 2016. He acknowledged, however, that he had not reported any of the roofing jobs on his income taxes. He also acknowledged that he lost his regular job in March or April 2017 and that no one else in his household had a job. Father testified that he bought the Car because his old one had broken down and he needed one to look for work. He admitted, however, that Boggs routinely drove the Car. He claimed that he allowed Boggs to do so because he had begun conducting online job searches and, in any event, he intended to give the Car to Boggs for his high school graduation. Father testified that he had no idea Boggs kept drugs in the house or sold them. He also denied telling Detective Knight that he knew about his son's illegal activities. He testified that he thought Boggs frequently had people over the house because he "was popular at school * * *."

**{¶14}** Father's mother also testified at the forfeiture hearing. She too testified that Father had purchased the Car using her $2,000 and money he had earned from various roofing jobs the previous year. She stated that they had decided to buy the Car because it was being sold at a good price, they were confident Father would have another job by the time Boggs graduated, and they wanted to give Boggs the Car as a gift. She testified that both Father and Boggs drove the Car and she had no knowledge of any illegal drug activity.

{¶15} The trial court indicated that it found Detective Knight's testimony more credible and concluded, based upon the evidence presented, that the Car was a proceed of Boggs' illegal activity. Boggs argues that the court erred in its determination because the only evidence the State presented at the forfeiture hearing was "the biased, self-serving, hearsay testimony of Detective [] Knight." According to Boggs, no 18 year old would admit to a police officer that he used drug proceeds to pay for a car. Likewise, he argues that the detective fabricated his testimony about Father's confessions. Boggs asserts that both logic and the evidence he presented dictate that Father used legal funds to purchase the Car. Thus, he asserts that the court erred by ordering the Car forfeited.

{¶16} Upon review, this Court must conclude that the record contains competent, credible evidence in support of the trial court's order of forfeiture. *See Vu*, 2012-Ohio-746, at ¶ 46, quoting *C.E. Morris Co.*, 54 Ohio St.2d 279 at syllabus. The State presented evidence that Boggs sold drugs out of his home and had a large amount of cash in his bedroom, despite being unemployed. Although Father claimed that he had purchased the Car using borrowed and saved money, he also acknowledged that he never reported the income he claimed to have earned, he was the only one in his household with a job, and he lost his job near the time when the Car was purchased. Moreover, Detective Knight specifically testified that Boggs admitted he used his drug profits to pay for the Car. To the extent Boggs challenges that testimony as biased or self-serving, the trial court was in the best position to view the demeanor of the witnesses, listen to their testimony, and assess their credibility. *See A.M. v. D.L.*, 9th Dist. Medina No. 16CA0059-M, 2017-Ohio-5621, ¶ 24, quoting *Wiseman v. Wiseman*, 9th Dist. Medina No. 13CA0009-M, 2014-Ohio-2002, ¶ 28. Because the record contains competent, credible evidence that Boggs obtained the Car either directly or indirectly as a result of his illegal drug activity, this Court

rejects his argument to the contrary.  *See* R.C. 2981.01(B)(11)(a) and 2981.02(A)(2).  Boggs' sole assignment of error is overruled.

III.

**{¶17}** Boggs' assignment of error is overruled.  The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.


DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

STEPHEN M. GRACHANIN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.